EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* GONZALO ALMODÓVAR, acusado y apelante.

Número 16359.

*Sometido:* 6 de mayo de 1958. *Resuelto:* 1 de mayo de 1961.

*William Morales Torres,* abogado del apelante; *J. B. Fernández Badillo, Secretario de Justicia, Arturo Estrella, Secretario*

*Auxiliar de Justicia, Archilla Guenard* y *Héctor R. Orlandi Gómez, Fiscal* y *Fiscal Auxiliar del Tribunal Supremo,* respectivamente, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

La acusación presentada en este caso contra el acusado Gonzalo Almodóvar y la coacusada Eulogia Toro Ramírez, por una infracción a la Ley número 220 de 1948, dice así: "Los referidos acusados Gonzalo Almodóvar y Eulogia Toro Ramírez, allá en o por el día 3 de junio de 1955 y en San Germán, P. R. . . . en ocasión en que fuera allanado el Hotel Las Lomas y la cantina y salón de baile contiguos a dicho hotel Las Lomas que son propiedad de y administrados por Gonzalo Almodóvar y Eulogia Toro Ramírez . . . ilegal, voluntaria, maliciosa y criminalmente, *tenían en su poder y/o posesión* listas de números de tres cifras seguidos de un guión y una cifra adicional, listas con números de tres cifras con un pequeño espacio en blanco a la derecha y un número adicional y listas de números, signos y letras y nombres de personas que se usan y pueden utilizarse para los juegos ilegales de la 'Bolita', 'Bolipool', combinaciones relacionados con los 'pools,' bancas de los hipódromos de Puerto Rico y loterías clandestinas."

La ley aplicable al caso es la sección 4 de la Ley número 220 de 15 de mayo de 1948, que dispone: "Toda persona que fuere sorprendida portando o conduciendo o *que tuviera en su poder* en cualquier concepto cualquier papeleta, billete, ticket, libreta, lista de números o letras, boletos o implementos que pudieran usarse para los juegos ilegales de la 'Bolita', 'Boli-pool', combinaciones relacionadas con los 'pools' o bancas de los hipódromos de Puerto Rico y loterías clandestinas y toda persona que *poseyere,* vendiere o en cualquier forma transportare éstos o cualesquiera otros análogos que se pudieran utilizar o usar en dichos juegos ilícitos, o conectados con la práctica de los mismos, incurrirá en delito público y será

arrestada inmediatamente, dándose traslado del caso sin demora al Fiscal del Distrito Judicial con jurisdicción, quien formulará la correspondiente acusación, y convicta que fuere dicha persona, será castigada con pena de cárcel que no será menor de seis (6) meses ni mayor de dos (2) años'' . . .

Esta apelación está circunscrita al proceso seguido contra Gonzalo Almodóvar por haber solicitado los acusados juicio por separado.

■■ De acuerdo con la sección 4, cuando no medie la situación de ser sorprendida la persona *in fraganti* dedicándose a la manipulación de los juegos de la bolita, la inculpación de la persona por poseer objetos delictivos descansa en la prueba de la relación (control inmediato) del poseedor con el local allanado, contraria a la presunción provista por la sección 3 para el caso en que no se encuentre ninguna persona dentro del local, en cuyo caso se presumirá que la persona o personas que estuvieren en posesión del local allanado como arrendatarios, dueños o en cualquier otra forma, se considerarán como responsables de la manipulación ilegal de los artefactos que se encuentran en dicho local, hasta que se pruebe lo contrario.

■■ La prueba de inculpación que conecta al acusado con el local allanado es la siguiente: El detective Rafael Rivera Rosario declarando a favor de El Pueblo, afirmó que durante los días 27 de mayo y 1ro. de junio de 1955, vio al acusado en la cantina contigua al Hotel Las Lomas; que en dicha cantina el testigo y otro detective pidieron un servicio de cerveza; que el primer servicio lo sirvió la señora Eulogia Toro; el segundo lo sirvió el acusado Gonzalo Almodóvar y el tercer servicio lo sirvió la señora Eulogia Toro y que le pagaron a ésta. (t. 77–78.) Dice que allí vieron al acusado con un juego de llaves que tenía al lado derecho del pantalón, pegado a la correa; que con dichas llaves abrió la vellonera de ese negocio para poner un disco. Además de eso, lo oyeron presentarse a los parroquianos presentes

como dueño de aquel negocio (t. 78). Dice que vieron a Gonzalo Almodóvar bregando con dinero y ordenando a los mozos Williams Santiago y Justo A. Rivera, que le sirvieran a los presentes.

La señora Carmen Vázquez Casiano, declarando a favor de El Pueblo, afirmó ser la administradora del Hotel Las Lomas (t. 87) y de la cantina (t. 90); que Gonzalo Almodóvar y Eulogia Toro "llevan negocios de pañuelos" (t. 88); que Eulogia Toro va al negocio "de noche nada mas (t. 89) todas las noches" (t. 90) y que el acusado Gonzalo Almodóvar "viene a veces. No todas las noches . . . regular, término medio". Dice que cuando ella (la testigo) se va, se queda Eulogia; además se queda un empleado llamado William Santiago, el cantinero (t. 90). Esta última declaración está corroborada por las licencias para vender cigarros y cigarrillos y para explotar una vellonera expedidas por el Colector de Rentas Internas a favor de Carmen Vázquez Casiano, expedidas todas con anterioridad al allanamiento.

La prueba de la defensa dejó establecido el hecho que el local es propiedad de Eulogia Toro Ramírez y es administrado por Carmen Vázquez Casiano. El empleado William Santiago, identificado por la propia prueba de El Pueblo, como la persona que atendía la cantina (t. 86), declaró que conoce al acusado: "él ha ido varias veces a comer a la cantina" (t. 357) y que el acusado pagaba por lo que se comía e iba irregularmente: "él va a comer hoy, va pasado mañana, está una semana o dos semanas sin ir" (t. 358). Dice que el día 3 de junio de 1955 cuando llegó la detective, el testigo estaba presente (t. 358) en la cantina "en esos mismos instantes le había servido una comida al señor Gonzalo Almodóvar". La aseveración, en cuanto a que el acusado estaba comiendo tranquilamente cuando llegaron los agentes del orden público está corroborada por la propia prueba de El Pueblo (t. 119). Estaba principiando a comer cuando de pronto llegó un grupo de personas . . . que el

Capitán Camacho le dijo a Almodóvar "entrégueme las llaves y acompáñenos al hotel que traigo una orden de allanamiento para el hotel" y entonces Almodóvar le contestó: "¿qué llaves tengo que entregarle si yo no soy dueño ni administrador de este negocio?" (t. 359) "¿por qué tengo yo que acompañarlo a allá?" (t. 360); que entonces el Capitán Camacho dijo: "De todos modos tiene que venir con nosotros y se lo llevó para el hotel". Dice que al poco rato, oyó la voz del Capitán Camacho que gritaba allá (fuera de la cantina); "hey, que traigan las llaves" y el testigo que tenía las llaves en la cantina, se las entregó a la señora Eulogia Toro, y ella se las entregó al Capitán Camacho y el Capitán Camacho abrió el hotel (t. 360). La aseveración, en cuanto a que, al conducir al acusado al hotel, ya el hotel había sido allanado, está establecida por la propia prueba de El Pueblo (t. 124–125). Dice el testigo que fue el Capitán Camacho el que abrió el hotel, y "la señora Eulogia Toro iba escoltada por un policía para ir a arriba a registrar el cuarto mío" (t. 360). Dice que conocía a Eulogia Toro porque trabajaba con ella en un taller (t. 362), propiedad de Eulogia Toro, "porque ella era la que pagaba y era la que se entendía con el taller" (t. 362). Dice que mientras trabajó en el taller, nunca vio en el taller al acusado, ni lo conocía tampoco (t. 363); que al acusado lo vino a conocer, después de trabajar en el Hotel Las Lomas (t. 363); que fue Eulogia Toro quien lo contrató para trabajar en la cantina y el hotel (t. 363). Dice que en el tiempo que lleva trabajando en el hotel nunca ha oído mencionar a Gonzalo Almodóvar como dueño o administrador del hotel (t. 367).

La prueba de inculpación que trató de establecer una relación extra-matrimonial entre Gonzalo Almodóvar y Eulogia Toro, por estar desmentida por la propia prueba del Ministerio Fiscal, nos abstendremos de comentarla. Resumiendo:

En cuanto a la prueba del Pueblo que conecta al acusado con la administración del sitio, el testimonio del detective señor Rafael Rivera Rosario, quien es el que declara, que una vez el acusado le sirvió un vaso de cerveza en la cantina y haberlo visto con un juego de llaves que tenía al lado derecho del pantalón y con dichas llaves abrió la vellonera del negocio para poner un disco y haberse presentado como dueño ante algunos parroquianos, está contradicho por la propia prueba del Pueblo, pues el testimonio de la testigo del Pueblo, doña Carmen Vázquez Casiano, establece rotundamente que la testigo era la administradora del hotel y la cantina. Esta afirmación de la testigo Vázquez Casiano está corroborada por una prueba que siempre se supone desinteresada, a menos que se demuestre que tal prueba forma parte de un plan o designio para evadir responsabilidad, como son las licencias expedidas por el Colector de Rentas Internas a favor de Carmen Vázquez Casiano para vender artículos y explotar una vellonera. Como se ve, no estamos ante un caso en que la culpabilidad del acusado quede establecida fuera de toda duda razonable. Por el contrario, examinada en conjunto la prueba de ambas partes, lo que surge es que Gonzalo Almodóvar no era el administrador del sitio allanado y sí lo era la señora Carmen Vázquez Casiano.

Si no se prueba la relación del acusado con el local allanado, el hecho de estar presente dicho acusado, al momento del allanamiento no es, aisladamente considerado, prueba suficiente para determinar su inculpación, y hay que presumirlo parte inocente (*innocent bystander*) *United States* v. *Di Re*, 332 U. S. 581, 92 L. ed. 210 (Jackson) (1948) cita precisa a las págs. 586–587 U. S. 216 L. ed. En estas circunstancias cualquier arresto del acusado con el consiguiente registro de su persona resulta ilegal y la prueba obtenida sobre la persona no puede utilizarse para lograr su convicción.

Este caso es diferente a los hechos examinados en *Pueblo* v. *Yulfo*, 71 D.P.R. 820, (De Jesús), (1950), cita precisa a la pág. 822, en el cual, la prueba demostró que al penetrar los agentes en la casa allanada, el acusado tenía una libreta en las manos, entonces corrió hacia el cuarto de Antonia Martínez . . . y "tiró el lápiz y la libreta sobre un ropero" (t. 7), caso típico del hecho delictuoso sorprendido *in fraganti*. En cuanto a la teoría aplicable, es diferente también del caso de *Pueblo* v. *Soto*, 77 D.P.R. 206, (Belaval), (1954), cita precisa a la 217, en el cual establecimos, que en casos de delitos *in fraganti* cometidos en la presencia del agente de orden público, se puede arrestar al infractor, y como un incidente del arresto legal, procederse al registro de su persona.

*Por las razones expuestas, se revocará la sentencia que declaró culpable al acusado en el presente caso.*

El Juez Presidente señor Negrón Fernández y los Jueces Asociados señores Pérez Pimentel y Serrano Geyls disintieron.

El Juez Asociado señor Serrano Geyls disiente por considerar que: (1) existe en los autos suficiente prueba para sostener que el acusado Gonzalo Almodóvar tenía la posesión o el control de la cantina donde fue hallado el material de bolita; y (2) siendo esa prueba suficiente para sostener la convicción, se hace innecesario resolver las cuestiones relacionadas con el registro de la persona del acusado.